IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

|  |  |  |
|---|---|---|
| THE PROVIDENT BANK d/b/a | ) | |
| PCFS MORTGAGE RESOURCES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 04-1017-T-An |
| | ) | |
| TENNESSEE FARMERS | ) | |
| MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND REQUEST FOR HEARING

Plaintiff Provident Bank, d/b/a PCFS Mortgages Resources, filed this action against
Tennessee Farmers Mutual Insurance Company for the alleged breach of contract and
violation of the Tennessee Consumer Protection Act, T.C.A. § 47-18-101 *et seq.* Jurisdiction
is predicated on diversity of citizenship, 28 U.S.C. § 1332.  The parties have filed cross
motions for summary judgment.  For the reasons set forth below, Defendant's motion for
summary judgment is GRANTED, and Plaintiff's motion for partial summary judgment is
DENIED.[1]  Plaintiff Bank's request for a hearing is also DENIED.

_____

[1] Plaintiff Bank filed a motion for partial summary judgment on January 3, 2005.  Defendant received
extensions of time to file a response on January 13, 2005, March 7, 2005, and May 25, 2005.  On November 30,
2005, Defendant filed its response and a cross motion for summary judgment.  After the deadline for filing a
response to Defendant's motion had passed, Plaintiff Bank asked for and received an extension of time to file a
response.  Plaintiff Bank's response was then due on January 30, 2006.  See Order 1/20/06.  However, Plaintiff's
response was not filed until February 14, 2006.  In light of the fact that this matter presents a question of law that can

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  To prevail on a motion for summary judgment, the moving party has the burden of showing the "absence of a genuine issue of material fact as to an essential element of the nonmovant's case."  <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1479 (6th Cir. 1989).  The moving party may support the motion with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).  The opposing party may not rest upon the pleadings but, "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

"If the defendant . . . moves for summary judgment . . . based on the lack of proof of a material fact, . . . [t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).  The court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter, however.  <u>Anderson</u>, 477 U.S. at 249.  Rather, "[t]he inquiry on a summary judgment motion . . . is . . . 'whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law.'"  <u>Street</u>, 886 F.2d at 1479 (quoting <u>Anderson</u>, 477 U.S. at 251-52). Doubts as to the existence of a genuine issue for trial are resolved against the moving party.

---

be decided on summary judgment, the court has considered Plaintiff's response even though it was not filed timely. Plaintiff is cautioned that the court may not be so lenient in future matters brought before it.

Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970).  The scope of insurance coverage is a question of law that is particularly appropriate for summary judgment. Standard Fire Insurance Co. v. Chester-O'Donley & Associates, Inc., 972 S.W.2d 1, 5-6 (Tenn. App. 1998).

The complaint alleges as follows.  On October 15, 1999, Robert Mathis and his wife, Julie Mathis ("mortgagors"), obtained a residential mortgage loan from Plaintiff Bank in the principal amount of $176,800.  The loan was secured by the mortgagors' residence, located at 12925 Highway 100, Toone, Tennessee.  Under the terms of the deed of trust and in order to secure the loan from Plaintiff Bank, the mortgagors were required to maintain a homeowners insurance policy to insure their residence.  Defendant Insurance Company issued a homeowners policy of insurance to the mortgagors.  The policy provided insurance coverage for, *inter alia*, the risk of loss from fire.  Plaintiff Bank was the insured mortgagee under the insurance policy pursuant to a standard insured-mortgagee clause.

The complaint further alleges that the mortgagors became delinquent in their payments on the mortgage and, on March 13, 2002, Plaintiff Bank published a notice in a newspaper of its intention to foreclose on the mortgagors' residence on June 6, 2002.  On March 22, 2002, the mortgagors filed a joint voluntary petition with the bankruptcy court. Thus, pursuant to the automatic stay provision under 11 U.S.C. § 362, the foreclosure did not occur, and the mortgagors continued to be the owners of the residence.

On July 9, 2002, the bankruptcy court discharged the mortgagors' bankruptcy, and a final degree that closed the case was entered on July 16, 2002.  On September 10, 2002,

3

mortgagor Julie Mathis filed another voluntary bankruptcy petition.  This petition was dismissed on October 9, 2002, and the case was closed on October 31, 2002.

On August 9, 2002, the mortgagors' residence was destroyed by fire.  The residence was a total loss.  The principal balance owed by the mortgagors to Plaintiff Bank as of December 31, 2003, was $175,308.95.  Plaintiff Bank is also allegedly owed $3,859.00 for sums paid for property taxes and insurance premiums on the residence.

The complaint further alleges that Plaintiff Bank was notified of the fire on August 23, 2002.  On September 19, 2002, Plaintiff Bank received a request from Defendant for a verification of mortgage and a pay-off quote.  Plaintiff Bank forwarded the information to Defendant. Although the mortgagors submitted a claim and proof of loss, Defendant has refused to process and honor the claim.

Plaintiff Bank alleges that it is a direct beneficiary or, alternatively, a third party beneficiary under the homeowners policy issued by Defendant to the mortgagors.  Plaintiff Bank sues for breach of contract and seeks the bad faith penalty under T.C.A. § 56-7-105(a) for Defendant's refusal to pay the claim.  Plaintiff Bank also seeks damages under the Tennessee Consumer Protection Act, T.C.A. § 47-18-101, *et al.*

Defendant Insurance Company asserts that it is not obligated to pay Plaintiff Bank's claim because (1) Plaintiff Bank failed to notify Defendant of the institution of foreclosure proceedings as required by the insurance policy and (2) Plaintiff Bank has failed to cooperate and provide documentation necessary to process the claim.

Foreclosure Proceedings

4

Pursuant to the terms of the homeowners insurance policy obtained by the mortgagors, Defendant Insurance Company may not deny "a valid claim of the mortgagee [Plaintiff Bank], if the mortgagee... has notified [the insurance company] **prior to loss of ... foreclosure ... or substantial change of risk of which the mortgagee was aware prior to loss**." Insurance Policy at p. 30, Defendant's Exhibit 3 (emphasis added). It is undisputed that Plaintiff Bank began, but did not complete, foreclosure proceedings on the mortgagors' residence and that Defendant Insurance Company was not notified of the institution of those proceedings until after the residence was destroyed by fire. Defendant contends that Plaintiff Bank did not comply with the terms of the policy when it failed to notify it of the initiation of foreclosure proceedings and that, consequently, it is not obligated to pay Plaintiff's claim.

Plaintiff Bank argues that a mortgagee's interest in a fire insurance policy may not be invalidated by foreclosure proceedings pursuant to Tennessee law, regardless of the requirements of the insurance policy. Plaintiff relies on T.C.A. § 56-7-804 which provides in part:

> Whenever any person shall ... as mortgagee ... possess or have any fire insurance policy on realty made payable to such person, or other person as that person's interest may appear, then such insurance as to the interest of the ... mortgagee ... therein named shall not be invalidated by an act or neglect of the mortgagor owner of the property so insured, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by change in title or ownership of the property....provided, that ... the mortgagee, ... shall notify the insurance company of any ... increase of hazard which shall come to the knowledge or the mortgagee....

According to Plaintiff, the statute clearly prohibits an insurer's invalidation of a policy due to foreclosure. Plaintiff also asserts that the initiation of foreclosure proceedings is not the

same as an actual foreclosure.

As to this last point, Defendant points to T.C.A. § 35-5-101 *et seq.*, which outlines the various steps of foreclosure under Tennessee law.  Defendant argues that the fact that the statute provides for steps, rather than one event, indicates that foreclosure is a process. Additionally, Defendant has submitted the report of John Moss, an expert in real estate and commercial law.  Expert Report, Defendant's Exhibit 10.  The report states that Mr. Moss is of the opinion that "foreclosure" is a process comprised of several steps and not just the sale of the real property.  Id.  The court's research indicates that other experts in the field agree with Mr. Moss' opinion.  See e.g., Grant S. Nelson & Dale A. Whitman, "Reforming Foreclosure: The Uniform Nonjudicial Foreclosure Act," 53 *Duke L.J.* 1399 (2004) ("A typical judicial foreclosure entails a lengthy series of steps...."); Ronald J. Mann, "Strategy and Force in the Liquidation of Secured Debt," 96 *Mich. L. Rev.* 159 (1997) ("The key problem with the existing analysis of the foreclosure process is that it focuses on the last step of the process--the foreclosure sale--without giving adequate attention to the earlier stages of the system of which that sale is but one small part."); Julia Patterson Forrester, "Constructing a New Theoretical Framework for Home Improvement Financing," 75 *Or. L. Rev.* 1095 (1996) ("Judicial foreclosure requirements vary from state to state, but generally include the following steps: a title search ..., filing a foreclosure bill of complaint, service of process, hearing, entry of the court's judgment, notice of sale, sale, judicial confirmation of the sale, distribution of sale proceeds, and determination of any deficiency judgment." ); Basil H. Mattingly, "The Shift From Power to Process: A Functional Approach to

Foreclosure Law," 80 *Marq. L. Rev.* 77 (1996) ("A typical action in equity to foreclose and sell involves a long series of steps...."); Charles J. Tabb, "The Future of Chapter 11," Symposium on Bankruptcy: Chapter 11 Issues, 44 *S.C. L. Rev.* 791 (1993) ("Under state law, the foreclosure process often involves a series of steps that take a certain discrete period of time."). <u>See also</u> <u>Weigner v. City of New York</u>, 852 F.2d 646, 652 (2nd Cir. 1988) ("[D]ue process only requires notice of the 'pendency of the action' and an opportunity to respond. . . . Once the City sent this notice, it was not required to send additional notices as each step in the foreclosure proceeding was completed or when each of the available remedies was about to lapse."); *In re Young*, 156 B.R. 282, 286-87 (Bankr. D. Idaho 1993) ("Recordation of the trustee's deed, the ultimate step in the foreclosure process, was likely prohibited by the automatic stay and 'was probably a nullity.'")

The court agrees with Defendant's position and finds that the initiation of foreclosure proceedings is tantamount to "foreclosure" within the meaning of the statute and the insurance policy. Therefore, Plaintiff Bank had a duty to notify Defendant of the initiation of those proceedings under the insurance policy.

Plaintiff, however, argues that, even if the insurance policy required it to notify Defendant of the initiation of foreclosure proceedings, T.C.A. § 56-7-804 prohibits Defendant from invalidating its claim. In turn, Defendant points to the language in the statute which states that the claim may not be invalidated by foreclosure provided that the mortgagee, i.e., Plaintiff, notified the insurer, i.e., Defendant, of any increase of hazard. Therefore, the court must determine whether the initiation of foreclosure proceedings

increased the hazard or risk to Defendant. Both parties acknowledge the scarcity of Tennessee law on this point.

Defendant relies on several out-of-state cases in support of its position. See Newark Fire Ins. Co. v. Pruett, 227 P. 823 (Colo. 1924); J. I. Kelly Co. v. St. Paul Fire & Marine Ins. Co., 47 So. 742 (Fl. 1908); Findlay v. Union Mutual Fire Insurance Co., 52 A. 429 (Vt. 1902). Defendant, however, acknowledges that other courts have held that foreclosure proceedings in themselves do not constitute a material increase of risk.[2] See Anderson v. Kentucky Growers Ins. Co., 105 S.W.3d 462 (Ky. App. 2003); Capital Building & Loan Association v. Northern Insurance Co. of New York, 116 So. 843 (La.1928).

This court need not decide which line of out-of-state cases to follow because there are two Tennessee which address the issue, at least implicitly. In Philadelphia Fire & Marine Ins. Co. v. Fields, 13 Tenn. App. 485 (Tenn. App. 1931), the lienholder sought to recover the proceeds of an insurance policy after a house was destroyed by fire. The court of appeals upheld the jury verdict in favor of the lienholder. The insurance company had sought to defend on the ground, *inter alia*, that the lienholder had "instituted proceedings to foreclose his vendor's lien against the property and failed to notify the Insurance Company of such foreclosure proceedings." Id. at 3.

In reaching its decision, the court looked to Chapter 123 of the Public Acts of 1925, now T.C.A. § 56-7-804, and implicitly held that the institution of foreclosure proceedings

---

[2] In its reply, Plaintiff states that Defendant's citation of cases that do not support its position is "curious." Reply at p. 9. Rather than being curious, Defendant's action is in line with the ethical admonition for a litigant to cite to the court authority that is contrary to its position.

8

was not an increase of hazard.  Id.

> Although Fields the person insured under the loss payable clause, did actually institute the foreclosure proceedings he was not required by said Act of 1925 to notify the Insurance Company of that fact. He was only required to notify it of any change of ownership or occupancy or increase of hazard which should come to his knowledge.

Id.  The appellate court also relied on Southern Insurance Co. v. Estes, 62 S. W. 149 (Tenn. 1900), which Defendant concedes supports Plaintiff's position.[3]  Based on the decisions in Estes and Fields, the court holds that the institution of foreclosure proceedings is not an increase of hazard under the statute.  Thus, Plaintiff may claim the protection of the statute even though it did not notify Defendant of the institution of foreclosure proceedings unless the contractual requirements of the insurance policy override the protections of the statute.

The next question for the court is whether the insurance policy's notification requirement is void under the statute, as argued by Plaintiff.  According to Plaintiff, T.C.A. § 56-7-804 prohibits an insurer's voiding an insurance policy because of a foreclosure.  The court does not read the statute so broadly.

In Phoenix Mutual Life Insurance Co. v. Aetna Insurance Co., 59 S.W.2d 517 (Tenn. 1933),[4] a claim was made for a fire loss on a mortgaged property which had been conveyed by the mortgagor to a different party without notice to the insurer. The mortgagee argued that the conveyance did not increase the risk to the insurer.  The Tennessee Supreme Court

---

[3] Although Estes was decided prior to the enactment of § 56-7-804 in 1925, Fields was decided after that date.

[4] Phoenix Mutual was decided after the enactment of T.C.A. § 56-7-804.

9

rejected this argument and held that an insurer has the right to determine for itself if it will provide coverage on a piece of property.

> Again, it is insisted that there is nothing to show that the conveyance complained of increased the hazard. But the mortgage clause provided for notice of a change of ownership whether the hazard was thereby increased in fact or not. **A contract of insurance is a contract personal in its nature, and the insurer has the right to determine for itself whether it shall become obligated to a grantee of the assured or not.** American Steam Laundry Co. v. Insurance Co., 121 Tenn. 13, 113 S. W. 394, 21 L. R. A. (N. S.) 442.

Phoenix Mutual, 59 S.W.2d at 518 (emphasis added).  See also Citizens Tri-County Bank v. Georgia Mut. Ins. Co., 11 S.W.3d 120 (Tenn. App. 1999) ("The courts in this state have long recognized that a standard union mortgage clause under § 56-7-804 creates a separate and distinct contract between the mortgagee and the insurance company.")  Accordingly, the parties were entitled to make their own contract of insurance, regardless of the protections provided in § 56-7-804.

Alternatively, Plaintiff asserts that, if there is any merit to Defendant's contention that under the policy a mortgagee is required to notify the insurer of the commencement of foreclosure proceedings, regardless of whether a foreclosure ever actually occurs, then the policy is ambiguous.  Plaintiff points to Defendant's acknowledgment that it might have been clearer for the policy to explicitly state that a mortgagee is required to notify the insurer when it begins a foreclosure. Depo. of Michael Parrott, Defendant's designee, at pp. 72-73, Plaintiff's Exhibit 1.  Despite this "acknowledgment," Parrott testified on behalf of the insurance company that the policy required Plaintiff to notify Defendant when it began foreclosure proceedings.  Id. at p. 72.

10

Parrott's also testified as follows:

Q. Well, my question is to you, though: What is the bank - What is the insurance company's position as to when it should first have notified the insurance company of this change or increase in risk?

A. I think the bank should have realized it when they initiated the foreclosure because that's when they realized their risk had gone bad.

Q. Okay. Is that the earliest date that the bank should have notified the insurance company of these - change in risk or increase in risk?

A. That - That's the - a hard question because the bank made the decision whether to file the foreclosure or not. If the bank does not file the foreclosure, the people get even further behind.  I think when - when the bank is in a situation that they're concerned about their loan, they should be concerned about the insurance company's interest also. At whatever point the bank does that.

Depo. of M. Parrott at pp. 77-78.  According to Parrott's testimony, it might have been advisable for Plaintiff to notify Defendant as soon as the mortgagors defaulted on their mortgage but were only required to notify Defendant when the foreclosure began. Consequently, Plaintiff's argument that the policy provision at issue was ambiguous is without merit.

In summary, the court holds that (1) Plaintiff's initiation of foreclosure proceedings was tantamount to foreclosure under the mortgagors' insurance policy and under T.C.A. § 56-7-804; (2) Plaintiff's initiation of foreclosure proceedings was not an increase of hazard under T.C.A. § 56-7-804 so as to deny Plaintiff the protection of T.C.A. § 56-7-804; (3) the parties contracted away the protection of T.C.A. § 56-7-804 in the insurance policy by making payment on the claim contingent upon notification to Defendant of foreclosure

11

proceedings; (4) the insurance policy is not void under T.C.A. § 56-7-804 nor is it ambiguous; (5) Plaintiff violated the requirements of the insurance policy by not notifying Defendant of initiation of foreclosure proceedings; and (6), consequently, Plaintiff cannot recover the proceeds of the insurance policy.

Accordingly, Defendant is entitled to judgment as a matter of law, and Defendant's motion for summary judgment is GRANTED.  Plaintiff's motion for partial summary judgment is DENIED.  Plaintiff's request for hearing is DENIED.  The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

12